IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

ANTONIO DUKES,                     )
                                   )
     Plaintiff,                    )
                                   )
v.                                 )     CASE NO. CV418-012
                                   )
MILLENNIUM OCEAN SHIPPING CO.      )
LTD., and MASTERMIND SHIP          )
MANAGEMENT, LTD.,                  )
                                   )
     Defendants.                   )
                                   )

## O R D E R

Before the Court is Defendants' Motion for Summary Judgment (Doc. 30), to which Plaintiff has responded (Doc. 35). For the following reasons, Defendants' motion is **GRANTED**. Accordingly, Plaintiff's complaint is **DISMISSED**. The Clerk is **DIRECTED** to close this case.

**BACKGROUND**

This case arises from an injury Plaintiff Antonio Dukes received while working as a longshoreman on the M.V ATLANTIC PENDANT ("Vessel"), a foreign-flagged vessel owned by Defendant Millennium Ocean Shipping Co. LTD ("Millennium") and managed by Defendant Mastermind Ship Management, LTD ("Mastermind"). (Doc. 31 at 1-2.) At the time of the incident, Plaintiff, a member of the International Longshoreman's Association Local 1441 since 2006, was employed as a longshoreman by Marine Terminals

Corporation-East d/b/a Ports America Stevedores ("Ports America"). (Id.) Ports America operates as a stevedoring company that carries out the actual loading of cargo onto vessels in the Port of Savannah. (Id. at 1.)

On January 3, 2015, the Vessel called at the Port of Savannah and hired Ports America to assist with the loading of Kraft Liner Board paper rolls ("KLB rolls"). (Id. at 2.) Plaintiff Dukes was working on the Vessel as a holdman and was tasked with stowing the KLB rolls in the cargo hold of the Vessel. Plaintiff was working alongside two other members of the stevedoring company, Eugene Miller and Bobby Chisolm. (Id.)

The process of stowing the KLB rolls required that a longshoreman, in this case Plaintiff Dukes, access the top of the KLB rolls that were 8 to 10 feet in height in order to guide subsequent drafts of the KLB rolls into place. (Id. at 2.) In order to access the top of the KLB rolls, Plaintiff was required to use a ladder. (Id. at 2-3.) In this case, Plaintiff used a 10-foot ladder that was located in the hold of the ship. (Id.) There were no identifying marks on the ladder and Plaintiff did not know who owned the ladder at the time but had possibly seen other longshoremen use the same ladder at least once or twice. (Id.) Plaintiff did not inspect the ladder or check to see if there were skid-resistant feet on the bottom of the ladder. (Id. at 3.)

As Plaintiff was using the ladder to access the top of the KLB rolls, the ladder moved underneath Plaintiff, causing him to fall to the floor of the hold. (Id.) At this point, Plaintiff recognized that the ladder did not have any skid-resistant feet. (Id.) Despite his fall, Plaintiff continued to use the ladder to access the top of the KLB rolls for the remainder of his shift. (Id. at 3-4.) Mr. Miller held the bottom of the ladder while Plaintiff worked. (Id.)

Plaintiff did not immediately notify any of his supervisors about the incident or that the ladder did not have any skid-resistant feet. (Id. at 4.) Two days later, Plaintiff went to see Dr. John Murrell at the Midtown Foot Clinic about ongoing pain in his heel and ankle. (Id.)[1] Plaintiff was eventually diagnosed with an ankle sprain. (Id. at 5.) Plaintiff returned to work as a longshoreman in March of 2015. (Id.)

On July 13, 2017, Plaintiff brought this action in the State Court of Chatham County, seeking recovery for the injury he suffered while working on the Vessel. (Doc. 1 at 13-18.) In

---

[1] The parties dispute whether Plaintiff Dukes actually complained of an ankle injury during his initial visit to Dr. Murrell. (Doc. 31 at 4-5; Doc. 36 at 9-10.) The records from Plaintiff's initial visit do not state that Plaintiff complained about any ankle injury. (Doc. 27, Attach. 1 at 86.) Plaintiff, however, returned to Dr. Murrell's office to complain that the doctor's office record did not properly mention his complaint about pain in his ankle. (Id. at 88.) While it is unclear whether Plaintiff actually complained about an ankle injury at his initial appointment, it is not relevant to this Court's consideration of Defendants' present motion.

3

his complaint, Plaintiff alleged that his injury was the result of Defendants Millennium's and Mastermind's negligence. (Id. at 16-17.) As relief, Plaintiff sought "medical expenses, past, present and future; lost wages, past, present and future; pain and suffering, both physical and emotional, past, present and future; consequential damages; and permanent impairment." (Id. at 17.)

On January 12, 2018, Defendants removed this action to this Court. (Doc. 1.) Now, Defendants have filed a motion for summary judgment, seeking dismissal of Plaintiff's claims. (Doc. 29.) Defendants contend that Plaintiff's complaint must be dismissed because Plaintiff has failed to (1) demonstrate that the ladder in question belonged to Defendants; (2) provide any evidence that the ladder was actually defective or a hazard; or (3) establish that Defendants were actually negligent. (Id.) In response, Plaintiff contends that there is enough evidence in the record to demonstrate that Defendants acted negligently by providing the defective ladder which caused Plaintiff's injury. (Doc. 35.)

**ANALYSIS**

I. STANDARD OF REVIEW

According to Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim of defense—on which summary

4

judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's

case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

II. OWNERSHIP OF THE LADDER WHICH CAUSED PLAINTIFF'S INJURY

Essential to this Court's consideration of whether Plaintiff has established enough evidence that Defendants were negligent in providing the ladder which caused Plaintiff's injury is the issue of whether there is evidence that Defendants even owned the ladder in question. In order to prove Defendants' negligence, Plaintiff must be able to establish that Defendants owned the ladder that actually caused the harm in this case. See, e.g., Jackson v. Gearbulk, Inc., 761 F. Supp. 2d 411, 421-22 (W.D. La. 2011) (discussing whether there was sufficient

evidence to determine whether a vessel owned the ladder in question). In their motion, Defendants contend that Plaintiff is unable to offer any evidence that Defendants actually owned the ladder. (Doc. 30 at 7-9.) Defendants assert that there is testimony in the record which provides that the ladder was unmarked and that Plaintiff did not know who owned the ladder which caused his injury. (Id. at 8.) Moreover, Defendants assert that there are no records which demonstrate that Defendants owned the ladder or any other relevant evidence that would even suggest that Defendants owned the ladder. (Id.) Defendants contend that there is no way to determine who owned the ladder in question because the Vessel and the ladder were sold before the initiation of this suit. (Id. at 13.)

For his part, Plaintiff concedes that there were no markings on the ladder to establish that Defendants owned or provided the ladder which caused his injury. (Doc. 35 at 4-5.) Plaintiff, however, argues that this Court can make certain inferences from other evidence in the record to conclude that Defendants owned, or at least that there is a dispute of material fact that Defendants owned, the ladder in question. (Id.) Plaintiff suggests that this Court should employ a systematic process of elimination to determine that Defendants owned the ladder. (Id.) As the basis of his argument, Plaintiff argues that he "testified that he personally did not bring the ladder and that

7

[Ports America] 'didn't hardly bring equipment onto the hold of a ship.' " (Id. at 4.) Because there is testimony that neither Plaintiff nor the stevedoring company brought the ladder onto the Vessel, Plaintiff asserts that Defendants, through process of elimination, must have brought the ladder onto the ship. (Id. at 4-5.)

There are several obvious flaws with Plaintiff's process-of-elimination argument. First, as Defendants correctly point out, there is no evidence in the record that only the longshoremen working for the stevedoring company and the Vessel's crew were on board the Vessel when the ladder was placed in the hold of the ship. There is no evidence that the ladder could not have been placed in the hold by an unidentified third party. Most importantly, however, the testimony Plaintiff relies on to support his argument is not definitive. Simply because the stevedoring company "didn't hardly bring equipment" onto the Vessel, does not mean that Ports America could not have brought the ladder onto the Vessel in this case. Due to the obvious flaws in Plaintiff's reasoning, the Court rejects his assertion that he can establish the ownership of the ladder simply by using a process of elimination.

Despite the clear flaws in Plaintiff's reasoning, the Court does find that there is one relevant piece of evidence that Plaintiff has provided with respect to the ownership of the

ladder. In the record, Mr. Miller testifies that he observed the ladder being passed into the hold of the ship by one of the ship's own crew members. (Doc. 35, Attach. 2 at 5.) In this Court's view, Mr. Miller's testimony offers at least one piece of evidence that the ladder in this case may have belonged to the Vessel and, therefore, Defendants. At this stage in the proceedings, the Court must construe all evidence in the light most favorable to the Plaintiff. Matsushita, 475 U.S. at 587-88. While the Court still doubts whether Plaintiff would be able to establish that Defendants owned the ladder in question, for the purposes of this order, this Court will assume that Plaintiff has identified at least enough evidence to survive summary judgment on this issue.

III. DUTIES UNDER THE LONGSHORE AND HARBOR WORKERS' COMPENSATION ACT

Even if this Court assumes Defendants' ownership of the ladder in this case, Plaintiff must still be able to identify enough evidence in the record to support his claim that Defendants were negligent, and that Defendants' negligence caused his injury. The Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901-950, authorizes suits by longshoremen injured due to the negligence of a shipowner or charterer. Originally, the LHWCA made shipowners strictly liable for injuries suffered by longshoremen due to

unsafe conditions on a vessel. Miller v. Navalmar (UK) Ltd., 685 F. App'x 751, 754 (11th Cir. 2017). In 1972, however, Congress altered the LHWCA and now shipowners generally only owe three distinct duties to longshoremen during cargo operations. Scindia Steam Nav. Co., Ltd. v. De Los Santos, 451 U.S. 156, 164-72, 101 S. Ct. 1614, 1620-24, 68 L. Ed. 2d 1 (1981). These duties, now known as the Scindia duties, include (1) the turnover duty, (2) the active control duty, and (3) the duty to intervene. Howlett v. Birkdale Shipping Co., 512 U.S. 92, 98, 114 S. Ct. 2057, 2063, 129 L. Ed. 2d 78 (1994)

In this case, Plaintiff provides no argument that Defendants violated either the active control duty or the duty to intervene. Instead, Plaintiff focuses his claim on the allegation that Defendants violated the turnover duty.[2] Pursuant to the turnover duty,

> [a] vessel must exercise ordinary care under the circumstances to turn over the ship and its equipment and appliances in such condition that an expert and experienced stevedoring contractor, mindful of the dangers he should reasonably expect to encounter, arising from the hazards of the ship's service of

---

[2] In his brief, Plaintiff states that Defendants "[b]reached [t]heir [d]uties under Scindia." (Doc. 35 at 5.) In his arguments, however, Plaintiff only discusses the turnover duty and generally offers no other argument that Defendants violated the active control duty or the duty to intervene. (Id. at 5-8.) Moreover, there is no evidence that any member of the Vessel's crew was present at the time Plaintiff's injury occurred. Accordingly, this Court will not examine whether there is sufficient evidence to support a claim that Defendants violated either the active control duty or duty to intervene.

10

> otherwise, will be able by the exercise of ordinary care to carry on cargo operations with reasonable safety to persons and property.

Howlett, 512 U.S. at 98, 114 S. Ct. at 2063 (citation and internal quotations omitted). As a corollary to this duty, the vessel must also

> warn the stevedore of any hazards on the ship or with respect to its equipment, so long as the hazards are known to the vessel or should be known to it in the exercise of reasonable care, and would likely be encountered by the stevedore in the course of his cargo operations, are not known by the stevedore, and would not be obvious to or anticipated by him if reasonably competent in the performance of his work.

Id. at 98-99; 114 S. Ct. at 2063 (citation and internal quotations omitted). "The duty to warn, however, is narrow. It does not include dangers which are either (1) open and obvious, or (2) which a reasonable competent contractor should anticipate encountering." In re Knudsen, 710 F. Supp. 2d 1252, 1274 (S.D. Ala. 2010).

In this case, Plaintiff contends that Defendants violated the turnover duty "by providing a defective partial ladder to longshoremen, bypassing the stevedore supervisor." (Doc. 35 at 6.) In his briefing, Plaintiff seems to suggest that Defendants violated the turnover duty because no stevedore supervisor was given any opportunity to inspect the ladder before it was given to the longshoremen for use. (Id. at 6-8.) Plaintiff suggests that he was permitted to rely on a presumed inspection by his

supervisor when using the ladder and, therefore, had no personal obligation to ensure that the ladder was not defective. (Id. at 8.)

As an initial matter, Plaintiff's argument has absolutely no legal support and appears to rely on a fundamental misunderstanding of the law. There is no legal requirement that a supervisor of a stevedoring company must inspect equipment before its use in cargo loading operations. Instead, the law plainly provides that a vessel has a duty to turnover a ship to a stevedoring company so that an experienced stevedore "will be able by the exercise of ordinary care to carry on cargo operations with reasonable safety to persons and property." Howlett, 512 U.S. at 98, 114 S. Ct. at 2063. This standard accounts for Plaintiff's own experience as a longshoreman and only requires that Defendants turn the ship over in such a condition that Plaintiff can safely carry on cargo operations.

In this case, Plaintiff has failed to demonstrate that Defendants violated its turnover duty for two reasons. First, Plaintiff has failed to establish that the condition in this case actually constituted a hazard. Plaintiff has not provided any evidence that a ladder without skid-resistant feet constitutes a hazard that is unreasonably safe. In fact, Defendants' expert, Walt Curran, testified that the Occupational Safety and Health Administration regulations do not even require

12

that ladders have skid-resistant feet. (Doc. 18, Attach. 1 at 8.) In fact, these regulations provide that ladders can be used without skid-resistant feet as long as held by another person. (Id.) In this case, there is evidence that Plaintiff's partner, Mr. Miller, was standing less than ten feet away from the base of the ladder at the time of Plaintiff's fall and could have held the bottom of the ladder to ensure its stability. (Doc. 27, Attach. 4 at 12.) Plaintiff has failed to provide any argument or evidence that the lack of skid-resistant feet on the bottom of the ladder was actually a hazard that Defendants should have either warned Plaintiff about or removed from the Vessel.

Even if Plaintiff could establish that the ladder in this case was a hazard simply because it did not have any skid-resistant feet, Plaintiff's claim would still fail because the hazard was one that Plaintiff should have recognized as an experienced stevedore. As previously discussed, Defendants cannot be held liable for a failure to warn about a hazard that a reasonable stevedore would recognize as a risk. Howlett, 512 U.S. at 98-99; 114 S. Ct. at 2063. In this case, the lack of skid-resistant feet on the bottom of the ladder would have been an open and obvious condition that should have been noticed had Plaintiff properly inspected the ladder before using it.

As an attempt to save his claims, Plaintiff appears to shift his claim in his brief from arguing that the ladder in this case

13

was defective because it lacked skid-resistant feet to arguing that the ladder was defective because it was a "partial" ladder.[3] (Doc. 35.) In his briefing, Plaintiff suggests that he fell because the ladder in question was only one part of a normally two-part extension ladder. Plaintiff's argument, however, to the extent that it is based on the fact that Defendants were negligent for providing a partial ladder for his use, also fails.

First, Plaintiff has again failed to provide any argument or evidence that a partial ladder is plainly a hazard. There is simply no indication in the record that one part of a typically two-part ladder is unsafe or prevents the stevedoring company from carrying on cargo operations with reasonable safety to persons and property. Additionally, to the extent that the partial ladder could constitute a hazard, Plaintiff has failed to provide any argument that the risk posed by the partial ladder was not an open and obvious condition that Plaintiff knowingly used at his own risk. Because Plaintiff has not shown that the ladder constitutes a hazard or that Defendants had an obligation to warn Plaintiff about the ladder, Plaintiff's claim

---

[3] The Court notes that Plaintiff's complaint focuses on the lack of skid-resistant feet on the bottom of the ladder. (Doc. 1 at 15.) From this Court's review, Plaintiff mentions the partial status of the ladder as a potential hazard for the first time in his response to Defendants' Motion for Summary Judgment. (Doc. 35.)

cannot survive. In this Court's view, Plaintiff made a last-minute attempt to shift the focus of his claim and still failed to provide any evidence that Defendants violated the turnover duty in this case.

## CONCLUSION

For the foregoing reasons, Plaintiff has failed to establish any basis for his claim that Defendants were negligent under the LHWCA. Accordingly, Defendants' Motion for Summary Judgment (Doc. 29) is **GRANTED**. Plaintiff's claims are **DISMISSED**. The Clerk is **DIRECTED** to close this case.

SO ORDERED this 3RD day of June 2019.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA